UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL DEWAYNE HAYNES,

    Petitioner,

  v.

D.K. SISTO, Warden

    Respondent.

2:07-CV-00484-JLR

ORDER

## I. INTRODUCTION

On February 16, 2007, Michael Dewayne Haynes ("Petitioner"), a prisoner in state custody, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Pet.") (Dkt. # 1). On July 18, 2007, Warden D.K. Sisto ("Respondent") filed a motion to dismiss (Dkt. # 14). The Petitioner filed a response in opposition on August 2, 2007 (Dkt. # 15). On October 18, 2007, Magistrate Judge Drozd recommended that the motion to dismiss be denied (Dkt. # 17), and Judge Karlton adopted this recommendation (Dkt. # 21) on December 28, 2007. On April 15, 2008, Respondent filed an Answer to the Petition for Writ of Habeas Corpus ("Ans.") (Dkt. # 29). On May 19, 2008, Petitioner

ORDER – 1

filed a Traverse to the Answer ("Traverse") (Dkt. #32). For the reasons discussed below, the court DENIES the petition as to all claims.

## II. BACKGROUND

**A.  Factual Background**

The state appellate court summarized the facts of the case as follows:

> On April 15, 2000, an African-American male entered the Denny's Restaurant in Newcastle and robbed the restaurant, along with employees and customers at gunpoint. A passerby saw an African-American male in the driver's seat of a mid-sized dark red or burgundy-colored car parked nearby. Placer County Sheriff's Detective William Summers identified defendant as a possible suspect three days later, and Stockton police began surveillance of his girlfriend's Stockton apartment. When Stockton police officers observed defendant drive away from the apartment in a dark red Saturn, they stopped the car and arrested the defendant on a parole warrant.
> Stockton Police Detective Michael Ward and Detective Summers questioned defendant after his arrest. Defendant spoke at length with Ward, making numerous inculpatory statements. He then admitted to Detective Summers that he had robbed the Denny's Restaurant in Newcastle.
> Defendant filed an in limine motion to exclude his incriminating statements made during the police interrogation. His challenge to the *Miranda* advisement itself focused on the following exchange between defendant and Detective Ward at the start of the interrogation:
> [Ward]: You need uh, some coffee or something?
> Defendant: Naw I was just a little cold and me and uh, uh, officer was just talking you know we just been keeping each other conversation
> [Ward]: Okay. Let me uh, get the [*preliminary*] out of the way. Since you're in custody your parole officer issued uh, parole violation for you. Let me get this out of the way all right. You have the right to remain silent. Anything you say may be used against you in the court of law. You have the right to talk to a lawyer and have him or her present while you are being questioned. If you cannot afford to hire one, one will be appointed to represent you before any questioning if you wish. [*You understand*?]
> Defendant: Okay. I had talked to him like around between 10:30 and 11:00. He had you know paged me and uh, and I told me [*sic*] I was going to

ORDER – 2

>come in and see him which I was, honest to God truth I was on my way to see him when I got apprehended.[1]

(Dkt. # 16, Doc. 2 at 2-4.)

**B.     Procedural Background**

A jury found Petitioner guilty of ten counts of second degree robbery, and five counts of attempted second degree robbery. (Ans. at 1.) Petitioner was sentenced to state prison for a term of nine years and eight months. (*Id.* at 2.) This sentence was in addition to sentences he received in other counties as part of a robbery spree. (*Id.*) He is serving an aggregate sentence of 55 years and 2 months in state prison. (*Id.*) Petitioner filed a timely appeal to the California Court of Appeal, Third Appellate District, which affirmed the judgment. (Dkt. # 16, Doc. 2.) Petitioner filed a petition for review with the California Supreme Court which was denied on May 12, 2004. (Dkt. # 16, Doc. 3, 4.)

On April 8, 2005, Petitioner filed a petition for writ of habeas corpus in the state superior court which was denied on April 28, 2005. (Dkt. # 16, Doc. 5, 6.) Petitioner subsequently filed petitions for writ of habeas corpus in the state appellate court and in the California Supreme Court. All petitions have been denied; the last writ was denied by the California Supreme Court on November 29, 2006. (Dkt. # 16, Doc. 7-10.) Respondent concedes that Petitioner has exhausted his stated grounds for relief. (Ans. at 2.)

---

[1] The court of appeal stated that the three bracketed, italicized portions of the quoted language indicate handwritten additions to the printed transcript.

ORDER – 3

## III. ANALYSIS

**A.     Grounds for Relief**

Petitioner raises eight grounds for relief:

1. Petitioner's rights under the Fifth and Fourteenth Amendment were violated when the trial court admitted statements obtained without a proper Miranda advisement;
2. Petitioner's rights under the Fifth and Fourteenth Amendment were violated by the admission of an involuntary statement;
3. Recharging Petitioner for a previously dismissed count violates his due process liberty interest;
4. There was insufficient evidence to support conviction on counts 10, 12, and 14;
5. His conviction on counts four through nine were based on illicit theory of constructive possession;
6. The trial court's refusal to provide lesser-included jury instructions violated a federally enforceable, state created right;
7. There was substantial conflict between his attorney and the prosecution's witnesses, warranting removal of defense counsel; and
8. Petitioner received inadequate assistance from counsel because he failed to call a potential alibi witness, and failed to present an affirmative defense.

(Pet. at 6(b) – 6(f).)

**B.     Standard of Review**

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's enactment. *Lindh v. Murphy*, 521 U.S. 320, 326-327 (1997). As Petitioner is in the custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment, Title 28 U.S.C. § 2254 remains the exclusive vehicle for Petitioner's habeas petition. *Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1126 (9th Cir. 2006) (quoting *White v. Lambert*, 370 F.3d 1002, 1009-10 (9th Cir. 2004)).

ORDER – 4

Under AEDPA, a party's petition for habeas corpus "may be granted only if he demonstrates that the state court decision denying relief was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1)); *see also Lockyer v. Andrade*, 538 U.S. 63, 70-71 (2003).

In ascertaining "clearly established Federal law," this court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Lockyer*, 538 U.S. at 71 (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer*, 538 U.S. at 71

Next, this court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." *Id*. "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13; *see also Lockyer*, 538 U.S. at 73. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529

U.S. at 413. The court applies this standard to the last reasoned decision by the state court. *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

Petitioner bears the burden of establishing that the state court's decision is contrary to or involved an unreasonable application of Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. *See Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003); *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. *Souch v. Schaivo*, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*, 537 U.S. 859 (2002).

*Petitioner's first claim:  improper admission of statements obtained without a proper Miranda advisement*

Petitioner asserts as his first ground for habeas relief that the trial court violated his rights under the Fifth and Fourteenth Amendment when it admitted statements he made to an interrogating officer without a knowing and intelligent waiver of his *Miranda* rights. (Pet. at 6(b)); *Miranda v. Arizona,* 384 U.S. 436 (1966). At issue is Detective Ward's failure to affirmatively confirm that Petitioner understood his *Miranda* rights prior to the interrogation, wherein Petitioner admitted to Detective Summers that he had robbed the Denny's Restaurant in Newcastle. (Ans. at 5.)

ORDER – 6

In *Miranda v. Arizona*, the Supreme Court held that a suspect subject to custodial interrogation must be informed in clear and unequivocal terms that he has the right to remain silent. *Miranda*, 384 U.S. at 467-68. To protect the Fifth Amendment privilege against self-incrimination, a suspect must also be informed of the right to consult with an attorney and to have counsel present during questioning. *Id.* at 469-73. The police must explain this right to him before questioning begins. *Id.* In some cases, "waiver can be clearly inferred from the actions and words of the person interrogated." *North Carolina v. Butler*, 441 U.S. 369, 373 (1979).

The state court of appeal rejected Petitioner's contention that the trial court's inclusion of the statements violated his rights. It explained its rationale as follows:

> We conclude that the first videotape supports the trial court's finding that Detective Ward did not ask defendant if he understood his *Miranda* rights as recited at the start of the interrogation. We nonetheless conclude that the totality of the circumstances establishes an implied waiver. Defendant appears relaxed at the start of his interrogation. There was no suggestion that he was under the influence of drugs or alcohol at the time he was questioned. The pace and flow of the conversation between defendant and detective Ward, including his response of "okay," indicated that he understood his rights and was ready to talk. Indeed, defendant responded in the same manner later in the police interrogation when a detective from the Lodi Police Department asked if he understood that his rights were still in effect. This dispels the defense theory that defendant used the word "okay" as a conversational filler that did not convey assent.

(Dkt. # 16, Doc. 2 at 5-7.) This claim was presented to the California Supreme Court which declined a direct review on this issue. (Dkt. # 16, Doc. 4.)

Here, Petitioner has not demonstrated the unreasonableness of the state court of appeal's decision that he gave an implied waiver of his rights. It is not the province of a

ORDER – 7

federal habeas court to replace its judgment over that of the state court. Viewing the facts and circumstances surrounding the interrogation warrants a determination that the state court reasonably applied *Butler* to find that Petitioner had given an implied waiver of his *Miranda* rights. As such, habeas relief is not available on this basis.

*Petitioner's second claim: improper admission of coerced statements*

Next, Petitioner alleges that he is entitled to habeas relief because his statement was made pursuant to coercive police tactics regarding the following: the scope of evidence against him, the threat of prosecuting his girlfriends, and the effect of cooperation on his punishment. (Pet. at 6(b).)

The Supreme Court has held that a waiver of the Fifth Amendment privilege must be voluntary as well as knowing and intelligent. *Colorado v. Spring*, 479 U.S. 564, 572 (1987). The waiver must be both "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception" and knowing in that it "must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* at 573.

Deception alone is insufficient to find a statement involuntary. *United States v. Miller,* 984 F.2d 1028, 1031 (9th Cir. 1993); *Amaya-Ruiz v. Stewart*, 121 F.3d 486, 495 (9th Cir. 1995) ("[m]isrepresentations linking a suspect to a crime or statements which inflate the extent of evidence against a suspect do not necessarily render a confession involuntary"). Law enforcement officers are allowed to engage in deception or trickery in obtaining a confession as long as the misrepresentation is not likely to produce a false

ORDER – 8

confession. *See Amaya-Ruiz,* 121 F.3d at 494-95 (suspect falsely told he had been identified by an eyewitness).

The state court of appeal rejected Petitioner's argument as follows:

> Having carefully reviewed the record, including the transcript of defendant's interrogation and Detective Ward's testimony during the pretrial proceedings, we conclude defendant's statements were voluntary, and the court did not err in admitting them at trial. None of the allegedly coercive tactics involved Detective Summers, who elicited the confession from the defendant in the second part of the police interview. Although Detective Ward misrepresented the state of the evidence and exhorted defendant to tell the truth during his part of the interview, we agree with the trial court's assessment that his tactics did not rise to a level of trickery or coercion that made defendant's statements or confession involuntary.

(Dkt. # 16, Doc. 2 at 9-10.) The California Supreme Court subsequently denied direct review of this claim. (Dkt. # 16, Doc. 4.)

The court of appeal disposed of Petitioner's claim related to the scope of evidence by noting that while Detective Ward misrepresented the evidence against the defendant, his tactics neither rose to a level of trickery, nor involved crimes related to the underlying criminal act. (Dkt. # 16, Doc. 2 at 10.) It further noted that the defendant failed to indicate any specific instances where Detective Ward's misrepresentations coerced the defendant to make statements about the underlying event. (*Id.*)

Next, the court of appeal disposed of Petitioner's claim of improper coercion from threatening prosecution against his girlfriends. The court noted that Petitioner had already admitted he acted alone in the 10-20 robberies he committed prior to Detective Ward's threats. (*Id.* at 11.) Additionally, Detective Summers did not mention Petitioner's girlfriends in the sequence of questions leading up to his robbery confession. (*Id.*) The

ORDER – 9

failure to provide a link between the alleged coercive act and the confession prevented the exclusion of this statement. (*Id.*); *see People v. Benson,* 52 Cal. 3d 754, 778-79 (1990) ("A confession is 'obtained' by a promise within the proscription of both the federal and state due process guaranties if and only if inducement and statement are linked.").

Finally, the court of appeal disposed of Petitioner's claim of coercion from the alternative use of threats and promises of leniency. The court concluded that Detective Ward's statements merely pointed out the benefit that "flows naturally from a truthful and honest course of conduct." (Dkt. # 16, Doc. 2. at 12.) Thus, the statements were considered voluntary. (*Id*.)

Here, Petitioner has not established that the court of appeal's decision affirming the trial court's admittance of these statements was unreasonable. It is not the province of a federal habeas court to replace its judgment over that of the state court. Viewing the facts and circumstances surrounding the interrogation warrants a determination that the state court's decision finding Petitioner's statements voluntary was reasonable. Accordingly, Petitioner's claim is without merit and habeas relief on this ground is denied.

*Petitioner's third ground: illicitly recharging Petitioner*

Petitioner next asserts claims that the state violated his due process liberty interest when it recharged him with "dismissed claims." (Pet. at 6(c).) The heading for this ground appears to refer to count six, a count that did not receive a holding order at the preliminary hearing. (Dkt. # 30, Doc. 13 at 255.) In this count, a "small reporting glitch"

ORDER – 10

prevented the presentation of any evidence at the hearing.  (*Id.* at 124.)  Without any evidence, the court could not hold the defendant over on this charge.  (*Id.* at 255.) Petitioner's argument focuses on counts five and seven; counts that were dismissed on a motion for a directed verdict.  (Dkt. # 30, Doc. 11 at 355.)  These two charges originated as second-degree robbery but were subsequently amended to attempted robbery.  (*Id.* at 360.)  It appears that Petitioner intends that some or all of these charges serve as the violation of his due process liberty interest.

Here, Petitioner does not present an issue capable of providing relief.  It is Petitioner's responsibility to include a specific reference to a constitutional guarantee, along with facts that show why he is entitled to such relief.  *Gray v. Netherland,* 518 U.S. 152, 162-63 (1996).  No such claims are made in this case.  Petitioner's sole contention that the state's action "violat[ed] . . . a federally enforceable due process liberty interest" (Pet. at 6(c)) does not reference a constitutionally recognized liberty interest.  A reference to due process without any additional facts is insufficient to state a federal claim. *Shumway v. Payne,* 223 F.3d 982, 987 & n.15 (9th Cir. 2000).  As such, it is beyond the reach of this court and habeas relief based on this ground is denied.

*Petitioner's fourth ground:  insufficient evidence to support conviction on counts 10, 12, and 14.*

Next, Petitioner claims that he is entitled to habeas relief due to the insufficiency of the evidence used to convict him on counts 10, 12 and 14.  (Pet. at 6(d).)  As support, he states that the victims for count 10 and 12 did not testify, and no evidence was

ORDER – 11

introduced to indicate that they were robbed. (*Id.*)  Petitioner failed to provide an argument supporting his habeas claims on count 14. (*Id.*)

Federal habeas corpus relief is available only if no rational trier of fact, viewing the evidence adduced at trial in the light most favorable to the prosecution, could have found proof of guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). It is the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "The question is not whether we are personally convinced beyond a reasonable doubt. It is whether rational jurors could reach the conclusion that these jurors reached." *Roehler v. Borg*, 945 F.2d 303, 306 (9th Cir. 1991).

Here, Petitioner fails to show that the evidence presented at trial was insufficient to support conviction. Petitioner claims "no substantial or even significant evidence was adduced to indicate that [the people in counts ten and twelve] had in fact been robbed." (Pet. at 6(d).)  This is not the appropriate standard for habeas relief. *Jackson* limits relief to situations where no rational trier of fact, viewing evidence in a light most favorable to the prosecution could have found guilt beyond a reasonable doubt. *Jackson*, 443 U.S. at 319. Testimony at trial indicated that both parties in counts ten and twelve turned over money to an armed gunman. (Dkt. # 30, Doc. 11 at 246-47.) Likewise, the victim in count 14 testified that he was at the restaurant during the robbery, and that Petitioner was demanding money. (*Id.* at 239-42.) The victim in count 14 told Petitioner he did not have any money, and Petitioner moved on. (*Id.* at 241.)

ORDER – 12

This evidence is sufficient for a rational fact finder to believe that these parties were the victim of robbery or attempted robbery. Viewed in light of *Jackson,* the decision is not based on an unreasonable determination of the facts from the evidence presented in the state court proceeding. Accordingly, Petitioner is not entitled to federal habeas relief for this claim.

*Petitioner's fifth ground:  convictions based on an illicit theory*

Petitioner appears to argue that the judgment was unlawful because several counts were "based solely on an illicit theory of 'constructive possession.'" (Pet. at 6(d).) This challenge is restricted to counts corresponding to restaurant employees, specifically, counts four through nine. (*Id.* at 6(e).) Due to the sparsity of Petitioner's complaint, this court looked to his earlier writs filed in the state court of appeal and state supreme court for the basis of this claim. In those petitions, Petitioner claimed that constructive possession "does not exist in California law and no plausible alternate theory of guilt can be devised from the State's case at trial." (Dkt. # 16, Doc. 7 at 56, Dkt. # 16, Doc. 9 at 56.)

California law for robbery requires property to be taken from the possession of the victim by force or fear. *People v. Nguyen,* 24 Cal. 4th 756, 761 (2000). Possession may be either actual or constructive. *People v. Marshall Jones,* 42 Cal. App. 4th 1047, 1053 (1996). A store employee does not need to be in control of the stolen property to be considered a victim. *Id.; see also People v. Gregory Jones,* 82 Cal. App. 4th 485, 491 (2000) ("business employees-whatever their function-have sufficient representative

ORDER – 13

capacity to their employer so as to be in possession of property stolen from the business owners); *People v. Scott,* 45 Cal. 4th 743 (2009) (finding that *Gregory Jones,* 82 Cal. App. 4th 485, states the correct law for constructive possession in California).

Here, Petitioner fails to show he is entitled to habeas relief on this basis. California law clearly allows the theory of constructive possession. The trial court applied this state law, not federal law as the basis for his conviction. Federal courts must respect a state's application of state law. *Lewis v. Jeffers,* 497 U.S. 764, 780 (1990). Indeed, a federal court may only intervene to correct errors of federal constitutional magnitude. *Oxborrow v. Eikenbery,* 877 F.2d 1395, 1400 (9th Cir. 1989). Petitioner failed to show that this state law contains errors of federal constitutional magnitude; therefore, Petitioner's claim on this ground is denied.

ORDER – 14

*Petitioner's sixth ground: failure to provide lesser included offense jury instructions*

Petitioner argues that he is entitled to habeas relief because the trial court denied his counsel's request to the issuance of jury instructions for receiving stolen property. (Pet. at 6(e).)  He claims support on the following grounds:  first, that it is mandatory under California law if the evidence could support acquittal on the primary charge, and conviction of the lesser charge; and second, that his counsel requested the lesser included instruction to the trial court.  (*Id.* at 6(e)-6(f).)

The general rule is that "[f]ailure of a state court to instruct on a lesser offense fails to present a federal constitutional question and will not be considered in a federal habeas corpus proceeding."  *James v. Reese*, 546 F.2d 325, 327 (9th Cir. 1976).  However, in *Bashor,* the Ninth Circuit noted that the defendant's right to jury instructions might, in some cases, be an exception to the general rule.  *Bashor v. Risley,* 730 F.2d 1228, 1230 (9th Cir. 1984).

The Supreme Court has held that in capital murder cases, a defendant is entitled to lesser included offense instructions; however, it expressly reserved judgment on whether due process would require giving the instructions of lesser included offenses in noncapital cases.  *Beck v. Alabama,* 447 U.S. 625, 638 (1980); *see also Turner v. Marshall*, 63 F.3d 807, 818-19 (9th Cir. 1995) ("[t]here is no well settled rule of law on whether *Beck* applies to noncapital cases") *but see Bradley v. Duncan*, 315 F.3d 1091, 1098-1101 (9th Cir. 2002) (finding federal due process violation in a post-AEDPA habeas case where defendant's request for instruction on the only theory of defense was denied).  A

ORDER – 15

determination that it is constitutional error to fail to instruct a jury on a lesser included offense in a noncapital case would be a new rule of law, and application of such a new rule in habeas corpus proceedings is precluded by *Teague v. Lane*, 489 U.S. 288, 316 (1989) ("habeas corpus cannot be used as a vehicle to create new constitutional rules of criminal procedure unless those rules would be applied retroactively to *all* defendants on collateral review through one of [two articulated] exceptions") (emphasis in original).

Here, Petitioner's claim may be dispatched because there is no established federal law that mandates that the jury be instructed on lesser included offenses in noncapital cases. *Beck,* 447 U.S. at 638.  Because the Supreme Court has not expressly ruled on this issue, there is no clearly established Federal law for the purposes of AEDPA. *See, e.g., Quinn v. Haynes,* 234 F.3d 837, 846 (4th Cir. 2000); *Lockyer*, 538 U.S. at 71 (a clearly established Federal law is the governing legal principles set forth at the time the state court renders its decision).  As such, habeas relief for this matter is denied.

*Petitioner's seventh ground:  failure to substitute conflicted counsel*

Petitioner contends that his appointed counsel had a conflict of interest from his firms prior representation of two victims of the robbery, along with "a crucial defense witness who had been dating another of the victims." (Pet. at 6(f).)  The trial court conducted a *Marsden* hearing to examine this issue.  (Dkt. # 30, Doc. 12 at 1[2]; Ans. at 19.)  At this hearing, Petitioner's counsel represented to trial court that he was not in possession of "any confidential information from the representation of [the two victims]

---

[2] Although the court has not reviewed the transcript from the *Marsden* hearing, Petitioner does not dispute Respondents' characterization and quotations from the hearing.

ORDER – 16

on drug cases which would provide the basis for declarations of conflict in this matter." (Ans. at 19 (quoting Reporters Transcript of *Marsden* Hearing at 9).) The other potential witness was a client of defense counsel's office; however, this party was not a victim of the robbery and at the time of the hearing, it was uncertain if he would testify. (Dkt # 30, Doc. # 12 at 18.)

The Sixth Amendment right to counsel includes the right to counsel of undivided loyalty. *Wood v. Georgia*, 450 U.S. 261, 271 (1981). However, "[i]n order to demonstrate a violation of his Sixth Amendment rights on the basis of an alleged conflict, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980); *Bonin v. Calderon*, 59 F.3d 815, 825 (9th Cir. 1995). An adverse effect in the *Cuyler* sense must be one that "significantly worsens counsel's representation of the client before the court or in negotiations with the government." *United States v. Mett*, 65 F.3d 1531, 1535-36 (9th Cir. 1995). "A conflict which . . . ultimately has no significant impact on counsel's representation of the client before the court . . . does not cause an adverse effect in the sense of *Cuyler*." *Id*. Although a defendant alleging a conflict of interest "need not demonstrate prejudice," he must prove that "counsel actively represented conflicting interests." *Cuyler*, 446 U.S. at 349-50.

The trial court concluded that there was no conflict requiring removal and that Petitioner's attorney was working very hard in Petitioner's favor. (Ans. at 20.) "[H]is

ORDER – 17

performance exceeded the performance of most criminal defense attorney's that the trial court had encountered." (*Id.*)

Here, Petitioner has failed to show that his counsel actively represented conflicting interests. Two of the victims were former clients; the third potential conflict was not a victim, and did not testify at trial. In light of the standards set forth in *Cuyler,* the trial court's decision not to substitute defense counsel was not objectively unreasonable, and Petitioner's seventh ground is denied.

*Petitioner's eight ground: ineffective assistance of counsel*

Petitioner contends that his trial counsel was ineffective for failing to call a "potential rock-alibi defense provable with Official State Records," and failing to present an affirmative defense. (Pet. at 6(f).) In order to prevail on his claim of ineffective assistance of counsel, Petitioner must show two things: an unreasonable error and prejudice flowing from that error.

First, Petitioner must show that considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). The court must determine whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance. *Id.* at 690. "Review of counsel's performance is highly deferential and there is a strong presumption that counsel's conduct fell within the wide range of reasonable representation." *United States v. Ferreira-Alameda*, 815 F.2d 1251, 1253 (9th Cir. 1986); *see also Strickland,* 446 U.S. at 689 ("court must indulge a

ORDER – 18

strong presumption that counsel's conduct falls within a wide range of reasonable assistance").

Second, Petitioner must prove prejudice. *Strickland,* 466 U.S. at 693. To demonstrate prejudice, it is necessary to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*

Here, Petitioner fails to show the unreasonableness of his counsel's omissions; it is not necessary to examine whether these actions caused any prejudice. In both claims, Petitioner fails to demonstrate his attorney's ineffectiveness and fails to satisfy his burden of showing through evidentiary proof of his counsel's purportedly deficient performance. To bring a valid claim, it is necessary to point to specific errors made by trial counsel, and show that these were not the result of reasonable professional judgment. *Strickland,* 466 U.S. at 690. Petitioner does not satisfy this requirement; he merely points out that his attorney decided against calling a witness and chose not to present an affirmative defense. Petitioner fails to show that he received ineffective assistance from counsel; therefore, habeas relief on this ground is denied.

### IV.  CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED as to all claims. The clerk is directed to enter judgment consistent with this order.

ORDER – 19

Dated this 23rd day of July, 2009

					_____
					JAMES L. ROBART
					United States District Judge

ORDER – 20